IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 2:10-CR-01128 |
| v. | : | |
| KARLOS BOUCHOT | : | November 4, 2022 |

**MOTION AND MEMORANDUM TO MODIFY/REDUCE SENTENCE**

The Defendant, Karlos Bouchot, moves to modify/reduce his sentence pursuant to Federal Rules of Criminal Procedure 35 and 18 U.S.C. § 3582(c)(1)(A)(i), as amended by Section 603 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018).

## I.   Introduction

On April 5, 2011, Defendant pleaded guilty to two counts: Count One for conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(5); and Count Five for conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1), and 841(b)(1)(A). *See* D.E. 521 at 1 (under seal). On March 8, 2012, the Court sentenced Defendant to 120 months imprisonment as to Count One and 360 months imprisonment as to Count Five, with the sentences to be served concurrently to each other and to the state sentence in Cause No. 94-CR-1746-C for aggravated robbery. *See id.* at 1–2. The Court also sentenced Defendant to three years of supervised release as to Count One and five years of supervised release as to Count Five. *See id.* at 3.

At sentencing, parties discussed whether the Court could order the federal sentence to run concurrent to Mr. Bouchot's state sentence. The attached transcript makes clear that the Court did not intend for Mr. Bouchot's federal sentence to run consecutive to his state sentence. The

Court was gravely concerned with Mr. Bouchot returning to state prison after providing evidence of Texas prison guard criminal activity. The following excerpts illustrate that this Court had no intention of Mr. Bouchot serving a federal sentence consecutive to the Texas state sentence:

SEALED
54

1 MR. PATTERSON: Yes, Your Honor.
2 THE COURT: And you're recommending?
3 MR. PATTERSON: Your Honor, we're going to
4 recommend --
5 THE ELECTRONIC RECORDING OFFICER: I can't hear you.
6 MR. PATTERSON: We're going to recommend -- from a
7 48 down to I think it's a 42, it's the first one with
8 something other than life, which is --
9 THE COURT: 42.
10 MR. PATTERSON: -- and we're recommending --
11 THE COURT: 42, 3.
12 MR. PATTERSON: We're recommending 360 months, and
13 that's based on, Your Honor, he's debriefed on several
14 occasions, he --
15 THE COURT: Now is he serving a state sentence? So
16 this is going to have to be consecutive.
17 MR. PATTERSON: Yes, Your Honor.
18 THE COURT: How long is the --
19 MR. PATTERSON: We're recommending --
20 THE COURT: -- state --
21 MR. PATTERSON: -- that he -- we're recommending
22 that he goes straight into federal custody. I don't know if
23 he can, Your Honor, but part of his debriefing was against --
24 THE COURT: Did you writ him here from state?
25 MR. PATTERSON: Yes.

SEALED
55

1 MR. HESS: Yes, Your Honor.
2 THE COURT: Then we can't send him -- we can't do
3 that.
4 MR. PATTERSON: Somehow the state custody -- somehow
5 he's going to have to be protected because part of his
6 debriefing was against prison guards in the state system.
7 THE COURT: Well, how am I going to do that?
8 MR. WOERNER: Yeah, we were going to ask you to make

9 the recommendation that he remain in federal custody.
10 THE COURT: He's writted out. I don't think I can
11 do that.
12 MR. WOERNER: Our understanding from Mr. Patterson
13 is he spoke with someone in the state --
14 MR. PATTERSON: I was told that it can be done. I
15 don't know the mechanism to make it work, but my understanding
16 is the --
17 THE COURT: I don't know how to do it. I can make
18 his term concurrent and recommend he stay in -- and say that
19 he stay in state -- in federal custody for his safety.
20 MR. WOERNER: That would work, Your Honor.
21 THE COURT: I don't know if it works or not. It's
22 up to the -- what do you think?
23 MR. RUTA: I think with the -- excuse me, if the --
24 he still would need to be --
25 THE COURT: I think she needs a chair.

SEALED

56

1 DEFENDANT'S MOTHER: I'm okay. I'm okay.
2 DEFENDANT BOUCHOT: Your Honor, I mean, excuse me,
3 if I could speak? I mean, I debriefed as completely as honest
4 as possible including about the guards, and I was told that
5 the reason I could do that was that way I wouldn't be going
6 back into state custody. And that's why --
7 THE COURT: I'm going to tell you, I don't want
8 anything to happen to Ms. Botello. Do you think you can help
9 with that?
10 DEFENDANT BOUCHOT: I mean, I'm not in touch with
11 them no more, ma'am.
12 THE COURT: If there's anything you can do, do it.
13 DEFENDANT BOUCHOT: Okay, ma'am. I haven't been in
14 touch with nobody, ma'am, but, you know, whenever I can, if I
15 do, I will.
16 MR. PATTERSON: There is potential, Your Honor,
17 (indiscernible) 35 later on. Most of the information that was
18 given us has not been of assistance to the Government yet, but
19 it's possible it could be later. And of course if we do
20 recall him to testify, he'll -- we'll file a motion for a
21 Rule 35 at that time. But right now we're recommending
22 360 months.
23 THE COURT: What are you recommending?
24 MR. WOERNER: Your Honor, we're concurring in that

25 recommendation.

SEALED

57

1 THE COURT: Is there anything you'd like to say
2 before sentence is imposed?
3 DEFENDANT BOUCHOT: I would just like to apologize
4 to the Court, I'd like to apologize to the Court. You know,
5 I'm guilty for engaging in criminal activities, I am and I
6 wish I could take it back. I can't, so I've done what I could
7 to make it better.
8 THE COURT: From what I've read, or from what I've
9 heard, it's just a way of life.
10 DEFENDANT BOUCHOT: Unfortunately, ma'am, like I --
11 I mean, I was 19 when I went to prison and my biggest mistake
12 was joining a gang, and then my second biggest mistake --
13 THE COURT: On the other hand, I understand that you
14 can't survive without it.
15 DEFENDANT BOUCHOT: Never. And then my next --
16 THE COURT: It comes at the first encounter.
17 DEFENDANT BOUCHOT: No. No, to be honest, ma'am,
18 I've never recruited nobody or tried to because I knew it was
19 a mistake that I, you know, that I walked into and I've
20 never -- every time I talk to people I'm always telling, man,
21 stay away from that type of life. My next mistake was having
22 a cell phone and that was just me, you know, trying to be in
23 touch with the world. I had been so long without talking to
24 girls, my family, you know.
25 And I'm not going to lie, I was -- I was, you know,

SEALED

58

1 using drugs and a lot of the stuff that I was involved in.
2 From the wire tap they can see we're just making money, you
3 know, to keep on doing drugs and, you know, just the wrong
4 things I was involved in.
5 And I just apologize for all of that. If you could
6 take into consideration how long I've been locked up, and I
7 would like to get out some time. You know, I've been in
8 prison since I was 19 years old and I would like a chance
9 before -- you know, like I said, I ain't even been able to hug
10 my mom since 2000 because I've been in SEG in state. That's
11 it, Your Honor. I just ask for mercy from the Court.

12 And I've done what I could, I've been -- the agent
13 will tell you I've been honest complete in everything that
14 they asked me. They've been able to corroborate and I'd be
15 willing to continue if they need me, you know. Like I said,
16 one of the main reasons when I agreed to debrief, they told me
17 that they wanted to know about the corruption and going in
18 there --
19 THE COURT: In the --
20 DEFENDANT BOUCHOT: Yes, in --
21 THE COURT: What I've heard from the trial that I
22 heard, it's unbelievable.
23 DEFENDANT BOUCHOT: McConnell, well, yeah, a lot of
24 prisons, yes. And so, yeah --
25 THE COURT: Well, you indicted them there?

SEALED

59

1 MR. PATTERSON: We indicted a couple of local
2 jailers because he got (indiscernible) he was in jail.
3 DEFENDANT BOUCHOT: No, that wasn't me, sir. That
4 was with the other guy.
5 MR. PATTERSON: Oh, that was with Preston Mascorro.
6 DEFENDANT BOUCHOT: Yeah. But --
7 MR. PATTERSON: No, no, not yet.
8 DEFENDANT BOUCHOT: But like I --
9 THE COURT: And that's the potential.
10 DEFENDANT BOUCHOT: Yeah, like I said, I mean, I --
11 everything that I told them they were able to corroborate, I
12 wasn't lying about all the guards that I'd spoken about. And
13 I was hesitant for a long time when my --
14 THE COURT: You were making more money than they
15 were.
16 DEFENDANT BOUCHOT: No, ma'am. And I was hesitant
17 to, you know, to come forward for a long time because I kept
18 saying I've got to go back to TDC, you know, I know what goes
19 on in there as far as opening the doors, that officers let,
20 you know, inmates go in on other inmates and beat them up and
21 stuff like that. And I kept saying, no, I didn't want to.
22 And they said, well, we can go ahead -- if you do that you can
23 stay in federal custody, and I said, well, you know, then I'd
24 be willing to --
25 THE COURT: I don't know how it works. I'll do

SEALED

1 whatever I can but I have no guarantees, I've never done this
2 before. So I'll see if I can fashion a judgment that'll do
3 that.
4 DEFENDANT BOUCHOT: Okay, ma'am.
5 THE COURT: How much time do you have left in TDC?
6 DEFENDANT BOUCHOT: 7 years, ma'am. I'm doing 25.
7 MR. RUTA: His release date is in September of 2019.
8 THE COURT: Okay. Well, that's not good.
9 DEFENDANT BOUCHOT: Yes. And in part of my debrief
10 I told them how officers open the doors and, you know what I
11 mean?
12 THE COURT: I've heard about that for years.
13 DEFENDANT BOUCHOT: Yeah.
14 THE COURT: I get those prisoner civil rights suits.
15 DEFENDANT BOUCHOT: Right, right. Yeah, and a
16 couple of them in there. McConnell -- I mean, I've heard from
17 different people that Marshals and inmates, that the federal
18 judge has the authority to be able to recommend we stay with
19 federal custody and that I would be able to stay.
20 THE COURT: No idea, never done it before, but I'll
21 give it a shot.
22 DEFENDANT BOUCHOT: All right. Thank you, ma'am.
23 THE COURT: I suppose I have authority to vacate a
24 writ. What do you think? If they try to writ him back into
25 state custody?

SEALED

61

1 (Pause in the proceedings.)
2 THE COURT: Well, I'll rely on you if something
3 happens to file something.
4 DEFENDANT BOUCHOT: One thing I want to ask, if that
5 happens, would -- I mean, would I be able to go already into
6 BOP or would I still stay there like, you know, in limbo like
7 I'm doing now? Oh, okay.
8 THE COURT: No experience with this. So what I'll
9 do is sentence you to 360 months concurrent with your state
10 sentence, and order that both sentences be carried in the
11 Federal Bureau of Prisons followed by 5 years supervised
12 release, downwardly depart to a zero fine, and let me see --
13 MR. RUTA: Excuse me, Your Honor?
14 THE COURT: -- Count 1 would be 10 years --
15 sorry -- Count 5 is 360 months, and those are concurrent with

16 each other. But supervised release is 3 years as to Count 1,
17 5 years as to Count 5. And of course those are not really
18 concurrent, even though they run together --
19 DEFENDANT BOUCHOT: Right, right.
20 THE COURT: -- if you violate the supervised
21 release, you could get two terms of imprisonment, one on top
22 of the other.
23 DEFENDANT BOUCHOT: Yes, ma'am.
24 THE COURT: Do you understand?
25 DEFENDANT BOUCHOT: Yes, ma'am.

SEALED

62

1 THE COURT: Because those terms of revocation can be
2 consecutive. Standard terms and conditions of supervision,
3 one with drug and alcohol treatment and mental health, night
4 time restriction of 12:00 midnight to 6:00 a.m., gang
5 prohibition. I'm going to recommend that you be, I hate to do
6 this, but that you be sent to the Bureau of Prisons someplace
7 out of Texas.
8 DEFENDANT BOUCHOT: Okay, ma'am.
9 THE COURT: It's hard for your mother to visit.
10 DEFENDANT BOUCHOT: I mean, at least eventually
11 we'll be able to at least have contact visits.
12 THE COURT: Is that for security reasons?
13 DEFENDANT BOUCHOT: Yes, I understand.
14 THE COURT: Anything else?
15 MR. WOERNER: I think he' probably benefit from the
16 drug treatment program, too.
17 DEFENDANT BOUCHOT: Oh, yes.
18 THE COURT: I'll recommend a inpatient drug
19 treatment program, intensive drug treatment program with the
20 Bureau of Prisons.
21 You have a right to appeal the sentence of this
22 Court by filing a written notice of appeal within 14 days of
23 today's date. If you cannot afford an attorney, one will be
24 appointed to represent you.
25 Are you appointed, you all appointed?

SEALED

63

1 MR. WOERNER: I was retained, Your Honor. Mr. Lerma
2 was appointed.
3 MR. LERMA: I was appointed.

4 THE COURT: Okay. But you've already qualified then
5 for court-appointed counsel so you don't have to re-qualify if
6 you want to appeal.
7 DEFENDANT BOUCHOT: Okay, ma'am. You said it's
8 consecutive -- I mean, concurrent with the state --
9 THE COURT: I made it concurrent.
10 DEFENDANT BOUCHOT: Thank you, ma'am.

On December 19, 1994, the State of Texas sentenced Mr. Bouchot to 25 years. Mr. Bouchot was placed into federal custody December 17, 2010, due to federal charges. March 8, 2012, Mr. Bouchot was sentenced to federal prison. Mr. Bouchot was in federal custody approximately 20 months and then returned to state custody. Mr. Bouchot is respectfully requesting he receive the 20 month federal custody credit toward his federal sentences. According to Mr. Bouchot's sentence monitoring computation data sheet, the federal sentence and state sentence were to run concurrent. *Please see attached computation sheet (Exhibit B).* According to the Bureau of Prisons, Mr. Bouchot' "projected satisfaction date" is July 30, 2027, and his expiration of full-term date is September 7, 2029.

## II.   ARGUMENT

Mr. Bouchot respectfully requests that the Court modify or reduce his sentence by 20 months crediting his federal time in federal custody pursuant Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)(1)(A)(i), as amended by Section 603 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). "Extraordinary and compelling reasons" warrant a reduction of his sentence because his sentence is more punitive and lengthy than this sentencing court intended. The Bureau of Prisons disregarded the intention of this Honorable Court that the sentences *not* run consecutive to one another. The BOP has declined to give Mr. Bouchot

---

credit for the 20 months he spent in federal custody.

Mr. Bouchot's situation clearly presents "extraordinary and compelling reasons" that warrant the Court's exercise of its authority to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The First Step Act of 2018 grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

The First Step Act removed the BOP as the sole arbiter of "compassionate release" motions and allowed defendants to bring compassionate release motions if the BOP declines or fails to act. *See* 18 U.S.C. § 3582(c)(1)(A). When a defendant brings a motion under 18 U.S.C. § 3582(c)(1)(A), the Court "may consider the full slate of extraordinary and compelling reasons and nothing in the now-outdated version of [U.S.S.G. §] 1B1.13 limits [the Court's] discretion." *United States v. Sturdivant*, No. 3:12-CR-74 (SRU), 2020 WL 6875047, at *3 (D. Conn. Nov. 23, 2020).

Since *Brooker* was decided, several other federal appellate courts have cited *Brooker* in holding that U.S.S.G. § 1B1.13 is not applicable to defendant-filed motions. *United States v. McCoy*, F. 3d _, 2020 WL 7050097, at *7 (4th Cir. Dec. 2, 2020); *United States v. Jones*, F. 3d , 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). In *Jones*, the Sixth Circuit Court of Appeals indicated that it was "following the Second Circuit's lead" in holding that "[i]n cases where incarcerated persons file motions for compassionate release, judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 2020 WL 6817488, at *9. Importantly, the *Brooker* Court explicitly referenced the statutory availability of sentence reductions to a term of years greater than time served, but less than the original sentence imposed. In *Brooker*, Judge Calabresi clarified that "compassionate release is

a misnomer," that "18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions," and that "[a] district court could, for instance, reduce but not eliminate a defendant's prison sentence." *Id.* at 237.

Accordingly, this Court can decide what constitutes an "extraordinary and compelling" reason for a sentence reduction. Here, the Court should exercise its authority and conclude that Mr. Bouchot's should be awarded credit for his 20 month federal confinement. BOP's failure to award credit for the 20 months Mr. Bouchot served in federal custody present extraordinary and compelling circumstances that warrant a sentence reduction. Moreover, this Court has jurisdiction to address this issue and correct the problem.

Wherefore, based on these arguments, Mr. Bouchot respectfully requests this Court modify or reduce his sentence in this matter to time served as equity and justice requires.

LAW OFFICE OF RUBEN R. LERMA, JR.

4410 Dillon Lane, Suite 48
Corpus Christi, Texas 78415
Tel: (361) 855-9999
Fax: (361) 852-1500
Email: RLERMA9334@AOL.COM

By: */s/ Ruben R. Lerma, Jr*
Ruben R. Lerma, Jr.
State Bar No. 12221475
Fed. ID No. 19477

## CERTIFICATE OF SERVICE

I, Ruben R. Lerma, Jr. hereby certify that on November 3, 2022, a true and correct copy of the above and foregoing motion was served on Assistant United States Attorney, Michael Hess, via notice of electronic filing.

By: */s/ Ruben R. Lerma, Jr.*
Ruben R. Lerma, Jr.